UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **JOHN GILBERT PEREZ SR.,** § <br> § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> **BEST BUY STORES, L.P.,** § <br> § <br> *Defendant*. § | Civil Action No. SA-20-CV-00812-XR |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

On this day, the Court considered Defendant Best Buy's Motion for Summary Judgment (ECF No. 32) on the merits, and the response and reply thereto. After careful consideration, the Court grants summary judgment in favor of Best Buy.

**Background**

On July 20, 2017, Plaintiff John Gilbert Perez, Sr. was injured at Best Buy when he leaned on the bathroom toilet paper dispenser, and it fell off the wall, causing him to fall. Plaintiff filed suit in Bexar County district court on July 18, 2019, naming Best Buy North Star as defendant. ECF No. 1-3. On January 21, 2020, Best Buy North Star was served. ECF No. 1-4. On June 26, 2020, Best Buy Stores, L.P. filed a First Amended Answer, Affirmative Defense, and Verified Denial, denying that Best Buy North Star was a proper party and stating that Best Buy Stores, L.P. is the occupier of the premises in question. ECF Nos. 1-5, 1-8. On July 9, 2020, Plaintiff served Best Buy Stores, L.P. with his First Amended Original Petition. Best Buy Stores, L.P. then removed the case. ECF No. 1.

On November 5, 2020, Plaintiff filed his First Amended Complaint (ECF No. 19), which remains the live pleading. It asserts three causes of action: (1) negligence/negligent activity; (2)

1

negligent training and supervision; and (3) premises liability. On July 1, 2021, Best Buy moved for summary judgment on the merits of all three claims.[1] Plaintiff has responded in opposition, though Plaintiff withdraws his negligence/negligent activity claim.

## Applicable Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In making the determination of whether a genuine issue of material fact exists, the court reviews the facts and inferences to be drawn from them in the light most favorable to the non-moving party. *Reaves Brokerage Co., Inc. v. Sunbelt Fruit & Vegetable Co., Inc.*, 336 F.3d 410, 412 (5th Cir. 2003).

## Evidence

For evidence, both parties rely on Plaintiff's deposition, and Plaintiff also submits the transcript of an interview of Best Buy employees Brian Girardi and Jordan Nobriga, Defendant's interrogatory responses, and photos of the dispenser. According to Plaintiff's deposition, on July 20, 2017, Plaintiff visited Best Buy in San Antonio. After shopping for about thirty minutes, he went to the restroom. ECF No. 33-2 at 34. The restroom had three stalls, and he entered the middle stall. *Id.* at 39. The handicapped stall, which was equipped with grab bars, was empty. *Id* at 39-40, 42.

Plaintiff stated that, after a bowel movement, he "kind of reached over against – to get the toilet paper out and kind of got myself up a little bit to wipe myself clean and kind of stood up a

---

[1] On November 20, 2020, Best Buy Stores, L.P. moved for summary judgment on the basis of limitations, arguing that Plaintiff did not exercise due diligence in serving Best Buy as a matter of law. Plaintiff opposed the motion, and the Court denied it.

little bit and put my elbow against the toilet paper dispenser, and as I was about to wipe, the toilet paper dispenser broke off and caused me to fall." *Id.* at 40. He testified that "the dispenser broke off, my left knee hit the ground. My right leg went under the stall, and . . . [I] scraped my left arm . . . underneath the stall." *Id*. at 45. Plaintiff testified that he will typically lean on something "if there's something there," and that at home he leans on his toilet paper dispenser, which is attached to the tile next to his shower. *Id*. at 40-41, 61-62. After Plaintiff fell, another customer in the restroom went to get help, and a Best Buy employee came to the restroom. *Id*. at 51-52. Plaintiff showed him the toilet dispenser on the ground. *Id* at 52. He then spoke to a manager, telling him, "I leaned over to use the bathroom and the dispenser broke off. I fell and hit my knee, my back, my butt, arm." *Id*. at 56.

Plaintiff and the manager then visited the restroom stall, and the manager noticed scratches on the stall wall. *Id*. at 58. Plaintiff testified that there were "a lot of scratches" like "it had fallen on the floor and [they] remounted it and scratches on the bottom (inaudible). I mean, they weren't fresh. They were old." *Id.* He believed the scratches were caused by the dispenser repeatedly falling off the wall. *Id*.

When asked, "When you pulled toilet paper from the dispenser, did it seem like it was loose or, like, there were any defects of the dispenser when you pulled toilet paper from it ?" Plaintiff testified "No, other than it – those toilet paper dispensers are so tight, that they – the tissue breaks off in pieces as you pull." *Id.* at 63. Thus, it was secure enough to dispense the toilet paper, and nothing gave Plaintiff a warning that it could come off the wall if he leaned on it*. Id*. at 63-64.

Plaintiff also submits a transcript of an interview of Bryan Girardi and Jordan Nobriga, the manager and operations manager of the store. They stated that the toilet dispenser "just sits on a bracket" and can just "lift off." They stated that every few months it has to be put back because it

3

gets knocked off (but not broken). ECF No. 33-2. The dispensers are not permanently fixed to the stall wall, but sit on a mount, which is permanent, like a TV mount. The mount is bolted to the wall and "it's two plastic hooks, and the dispenser has a recessed hook in the back that sits on top of it." *Id.* The dispensers are intentionally made so they can be easily replaced if they break. *Id.* Nobriga stated, "The idea behind the bracket is that if the dispenser did break or stop functioning we can simply lift it off, and put a new one on." *Id.* He stated, "It's not frequently that we have to do that. They do sometimes come off the bracket." He stated, "Sometimes, the customer will lift them off, trying to get that last little bit of toilet paper." He also stated, "Or because they don't know how it works, and they get frustrated with it, and it happens periodically." Nobriga stated that "on a quasi-regular basis, someone will say, 'Hey, one of the toilet dispensers comes off.'" When that happens, someone may have taken it off or lifted it up, or kids might have been playing in there. *Id.* Either it's on or its off (on the floor) – there is no in between. Neither employee had encountered this type of accident before, though neither had encountered any slip and falls or issues in the bathroom in the last six years. Nobriga stated, "I think a reasonable person would not do that," meaning lean on the dispenser. He stated the dispenser was simply for dispensing toilet paper, and a person would use handrails in the appropriate stall if he needed leverage.

Plaintiff also points to BestBuy's interrogatory response number 6 stating that, "immediately following Plaintiff's alleged injury in the restroom at issue, Best Buy employee Andrew Tovarez requested the replacement of the bracket, which secured the toilet paper dispenser to the wall, in the restroom stall at issue." ECF No. 33-2 at 118.

**Analysis**

As noted, Plaintiff withdrew his negligent activity claim, and thus the only remaining claims are premises liability and negligent training and supervision. For his premises liability

4

claim, Plaintiff contends that Best Buy knew that the dispenser came off on a regular basis, but "did not place any kind of warning on the dispenser nor did it do anything to remedy the dangerous toilet paper dispenser nor ensure that it was being properly installed." ECF No.33 at 1. Plaintiff asserts that the dispenser was "defective and improperly attached" and also that it was "improperly mounted to the wall." *Id.* at 1-2.

To prevail on a premises-liability claim, a plaintiff must show: (1) actual or constructive knowledge of a condition on the premises by the owner or occupier; (2) that the condition posed an unreasonable risk of harm; (3) that the owner or occupier did not exercise reasonable care to reduce or eliminate the risk; and (4) that the owner or occupier's failure to use such care proximately caused the plaintiff's injury. *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000). Plaintiff alleges that the "improperly secured toilet paper dispenser posed an unreasonable risk of harm." ECF No. 33 at 3. Best Buy moves for summary judgment on the basis that there is no evidence Best Buy knew or had constructive knowledge of the allegedly "improperly secured" toilet paper dispenser, and on the basis that Plaintiff cannot prove the dispenser posed an unreasonable risk of harm.

The key issue is whether the dispenser posed an unreasonable risk of harm. Plaintiff contends that the Court should consider certain factors in determining whether an unreasonable risk of harm exists, including (1) past injuries or occurrences from the condition; (2) whether the condition was unusual compared to other objects in the same class; and (3) reasonable alternatives available to the invitee to avoid the condition. ECF no. 33 at 3 (citing *Martin v. Chick-Fil-A*, 2014 WL 465851, (Tex. App.—Houston [14th Dist.] 2014, no pet.)). Plaintiff asserts the dispenser meets these criteria because "[t]he dispenser fell off the wall, causing Plaintiff's injury because it had a propensity to fall off the wall and Best Buy had a history of not properly attaching the

5

dispenser." ECF No. 33 at 3. Plaintiff asserts this was a dangerous on-going issue because the scrapes on the stall wall showed it had fallen on several prior occasions and employees knew it fell repeatedly. *Id.* at 4. Plaintiff contends he had no warning that the dispenser was unstable and improperly secured and "reasonably expected that the toilet paper dispenser would be properly secured" such that a jury must decide whether the improperly secured dispenser posed an unreasonable risk of harm.

Best Buy asserts that Plaintiff does not know whether the dispenser was improperly secured, how it became improperly secured, or how long it had been improperly secured prior to the accident. Best Buy contends that the dispenser was designed to be easily removed from the wall for ease in servicing and that it was functioning properly when Plaintiff fell. Best Buy points out that Plaintiff himself testified that it was functioning properly and he did not notice any defects prior to his fall. As Best Buy notes, "a toilet paper dispenser dispenses toilet paper; it is not intended to be a support for a grown adult." ECF No. 34 at 2.

Best Buy also argues that the factors Plaintiff cites actually support summary judgment – there had been no evidence of any prior accident or injury due to the dispenser nor complaints about its safety, there was nothing unusual about the dispenser and similar dispensers are seen in public restrooms, and Plaintiff had a reasonable alternative in using the handicapped stall, which comes with rails designed to support weight. Best Buy argues that this case is like *Martin*, where the court found no unreasonably dangerous condition as a matter of law when, among other things, no customer had ever tripped or fallen on the parking blocks and there had been no complaints about the safety of the blocks, the blocks were not unusual, and the plaintiff had the alternative of using the pedestrian crosswalk. *Martin*, 2014 WL 465851, at *5; *see also Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161 (Tex. 2007) (holding that ramp did not pose an unreasonable risk of harm

as a matter of law where it met applicable safety standards, no other customer visiting the property had been injured by the ramp, nor had the dealership received complaints about the ramp's safety). The *Martin* court held, "Martin has only shown that she tripped on the cement block and fell, and the mere happening of an accident is not evidence that there was an unreasonable risk of such an occurrence." *Martin*, 2014 WL 465851, at *6.

The Texas Supreme Court has distinguished between conditions that are unreasonably dangerous from the moment they are put into use and conditions that become dangerous over time due to wear and tear. *See CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97 (Tex. 2000). In *CMH Homes*, the Texas Supreme Court noted that the slanted grape display in *Corbin v. Safeway* allowed grapes to fall on the floor throughout the day and had no mat to protect customers from slipping, and thus it was a dangerous condition from the moment it was used, unlike a premises that begins safe and becomes unsafe over time. In contrast, the step/platform on which the plaintiff in *CMH Homes* was injured was safe when installed, but could become unstable and present an unreasonable risk of injury by virtue of its use over twelve to fifteen months or if hit and damaged by a truck. It is unclear whether Plaintiff contends that the dispenser in this case is always dangerous as "unsecure" from the time it is installed because of the choice of bracket used, or whether he alleges that it was initially safe but became unsecure and therefore dangerous after installation due to wear and tear.

Plaintiff seems to be alleging that the dispenser constituted a dangerous condition from the moment it was used because it was "improperly secured" and repeatedly fell off the wall. To succeed on this theory, Plaintiff must show that a toilet paper dispenser in a bathroom stall that comes off easily and will not support the weight of a person who leans on it is an inherently dangerous condition. But Plaintiff presents no evidence that Best Buy was aware that any person had leaned on a dispenser (this type or any other) and been injured, that anyone had indicated to

7

Best Buy that its chosen dispenser posed a risk of injury, or that Best Buy's chosen dispenser was materially different from dispensers used in other public bathrooms. Nor has Plaintiff presented any evidence, such as from a human factors psychologist, that it would be reasonable for a person to assume that a toilet paper dispenser would support their weight if they leaned on it. Plaintiff simply surmises that toilet paper dispensers should support a person's weight and those that do not pose an unreasonable risk of harm.

"A condition is not unreasonably dangerous simply because it is not foolproof." *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 409 (Tex. 2006). Under Plaintiff's theory, a premises owner or occupier must ensure that toilet paper dispensers and other items in a bathroom stall not designed to support an invitee's weight nevertheless are strong enough to do so, or it must provide warnings that the items will not support a customer's weight and are not to be leaned upon. The Court is not willing to hold that such a duty exists. On the evidence before it, the Court finds that Best Buy's use of a toilet paper dispenser that sits on a bracket and is designed to come off easily, and is not designed to support a customer's weight does not create an unreasonable risk of harm. "[P]remises owners are not strictly liable for conditions that result in injury." *CMH Homes, Inc.*, 15 S.W.3d at 102. "Evidence that an owner or occupier knew of a safer, feasible alternative design, without more, is not evidence that the owner knew or should have known that a condition on its premises created an unreasonable risk of harm." *Id.* Plaintiff did not present any evidence that the unit on which he was injured inherently presented an unreasonable risk of harm because it would not support his weight. Plaintiff presents no evidence that Best Buy knew or reasonably anticipated that customers would lean on the dispenser and fall. The fact that the dispensers had come off the wall in the past does not, standing alone, amount to legally sufficient evidence of a condition that poses an unreasonable risk of harm.

If Plaintiff alleges instead that the dispenser could pose an unreasonable risk of harm due to wear and tear causing it to become unsecure over time, then there must be evidence that the premises owner or occupier failed to use reasonable care to determine whether the dispenser had become loose or that reasonable inspection of the unit would have revealed that it had become unsecure. But Plaintiff has not presented evidence that the dispenser had become improperly secured, and his testimony indicates it was attached and functioning as intended. Plaintiff relies on the testimony of Best Buy employees that the dispensers regularly came off the walls. "An owner's or occupier's knowledge of prior incidents of damage to a premises would bear on the reasonableness of inspections and the reasonableness of the care exercised by the owner or occupier to make the premises safe. But a premises owner or occupier is not strictly liable for defects on its premises." *Id.* The evidence indicates that Best Buy restrooms were inspected hourly or at least daily. Plaintiff contends there is no evidence that the dispenser was checked on the day of his fall, but it is Plaintiff's burden to provide evidence that Best Buy failed to inspect the dispenser as frequently as it reasonably should have. There is no such evidence, nor is there evidence that, if the dispenser had become improperly secured, such a condition had existed for a sufficient time that Best Buy had constructive notice of the unreasonable risk of harm.

Accordingly, summary judgment is warranted on the premises liability claim. The negligent training claim, which is based on the theory that Best Buy personnel knew the dispenser was falling off the wall because it was defective and/or because they were not being properly installed but "did nothing" fails as well. Even when an owner or occupier knows that a condition of the premises will become unsafe over time, the duty owed is simply to exercise reasonable care to protect against danger from a condition that creates an unreasonable risk of harm. *CMH Homes,*

*Inc.*, 15 S.W.3d at 101. Plaintiff has failed to demonstrate that the dispenser posed an unreasonable risk of harm or that, even if it had become loose enough to pose such a risk, Best Buy did not exercise reasonable care in inspecting the bathrooms to discover such risk. There is no evidence that Best Buy failed to use reasonable care to determine whether the dispenser had become improperly secured or that reasonable inspection of the bathroom/dispenser would have revealed that it had been become improperly secured. *See CMH Homes, Inc.*, 15 S.W.3d at 101.

## Conclusion

The Court finds that Plaintiff has failed to raise a material fact issue sufficient to defeat summary judgment. Accordingly, Defendant's motion for summary judgment (ECF No. 32) is GRANTED. Plaintiff shall take nothing by his claims and Plaintiff's claims are DISMISSED WITH PREJUDICE. The Clerk shall issue judgment in favor of Defendant separately according to Rule 58. Defendant is awarded costs and shall file a bill of costs in the form required by the Clerk of the Court, with supporting documentation, pursuant to the Local Rules.

It is so ORDERED.

SIGNED August 10, 2021.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE